UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTOPHER M. DOTTOLO,

                            Plaintiff,

v.                                                                          5:08-CV-0390
                                                                           (GTS/ATB)
BYRNE DAIRY, INC.; NICK MARSELLA,
Individually and in his capacity as V.P. of Operations;
KEVIN J. SUTTON, Individually and in his capacity
as Warehouse Manager; and BRANDON COOK,
Individually and in his capacity as Supervisor,

                            Defendants.

_____

APPEARANCES:                                              OF COUNSEL:

O'HARA, O'CONNELL & CIOTOLI                  TIMOTHY A. COLLINS, ESQ.
   Counsel for Plaintiff
7207 East Genesee Street
Fayetteville, NY 13066

HANCOCK & ESTABROOK, LLP                   JOHN T. McCANN, ESQ.
   Counsel for Defendants
1500 AXA Tower I
Syracuse, NY 13221

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM DECISION and ORDER

          Currently before the Court in this employment discrimination action filed by Christopher

M. Dottolo ("Plaintiff") is a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ.

P. 12(b)(6) filed by Byrne Dairy, Inc., and three of its employees, Nick Marsella, Kevin J.

Sutton, and Brandon Cook ("Defendants").  (Dkt. No. 13.)  For the reasons set forth below,

Defendants' motion is granted and Plaintiff's Complaint is conditionally dismissed unless,

within thirty (30) days of the filing date of this Decision and Order, Plaintiff files an Amended

Complaint that states a claim upon which relief can be granted.

I.    RELEVANT BACKGROUND

A.    **Plaintiff's Claims**

Liberally construed, Plaintiff's Complaint asserts the following four claims against

Defendants: (1) a claim for sexual discrimination and hostile work environment under Title VII

of the Civil Rights Act of 1964 ("Title VII"); (2) claim for retaliation and wrongful termination

under Title VII; (3) a claim for sexual discrimination under Section 296 of New York's Human

Rights Law ("NYHRL"); and (4) a claim for disability-based discrimination and/or harassment

under Title I of the Americans with Disabilities Act ("ADA").  (Dkt. No. 1, ¶¶ 29-62.)

Generally, in support of these claims, Plaintiff alleges that, despite his satisfactory work

performance at Byrne Dairy between June 2000 and June 2006, Defendants took the following

actions against him: (1) on April 12, 2006, Defendant Cook subjected Plaintiff to

embarrassment, ridicule, humiliation and insults by making a sexually derogatory comment to

him;[1] (2) after Plaintiff reported the incident to Plant Manager Dave Laden at some point in time,

Defendant Cook conspired with the three referenced co-workers to conceal the incident; (3) after

Plaintiff then reported the incident (as well as certain unrelated illegal activity by Defendant

Cook in the workplace) to Defendant Marsella on April 28, 2006, Defendant Marsella instructed

Defendant Sutton to investigate the incident;[2] (4) on May 1, 2006, Defendant Sutton called

Plaintiff and asked him why he had never before reported the above-referenced illegal activity by

Defendant Cook; (5) on or about May 2, 2006, Plaintiff met with Defendant Sutton and Mark

---

[1]      More specifically, Plaintiff alleges that, on April 12, 2006, Defendant Cook, while in the presence of three co-workers, looked directly at Plaintiff and said, "If you had a picture of your wife's pussy, would you bring it in to show it to everybody?"  (Dkt. No. 1, ¶ 17 [emphasis removed].)

[2]      More specifically, Plaintiff alleges that, on April 28, 2006, he also told Defendant Marsella "about illegal activities Cook was engaging in at the workplace, specifically selling bootleg movies for personal gain."  (*Id.* at ¶ 22.)

Nolan, at which time Defendant Sutton terminated Plaintiff's employment for purportedly "falsely accusing a supervisor of a gross misconduct statement"; (6) at some point thereafter, Defendant Byrne Dairy opposed Plaintiff's claim for unemployment benefits with the New York State Department of Labor, through submitting a signed statement from Defendant Sutton, which misrepresented Plaintiff's account of Defendant Cook's statement of April 12, 2006.  (*Id.* at ¶¶ 15-28.)  In addition, Plaintiff alleges that, despite the fact that he was in "good mental and physical health" when he started his employment at Byrne Diary in June 2000, Byrne Diary wrongfully coerced him into agreeing to its policy of requiring all new employees to consent to a medical examination upon demand, and "repeatedly subjected [him] to this illegal condition of employment throughout the entire term of his employment . . . ."  (*Id.* at ¶¶ 19, 57-62.)

Familiarity with the remaining factual allegations supporting the four claims asserted in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties.  (*See generally* Dkt. No. 1.)

**B.     Defendants' Motion to Dismiss**

Generally, in support of their motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), Defendants essentially assert the following five arguments: (1) Plaintiff's claims of sexual harassment and hostile work environment under Title VII must be dismissed because the single alleged statement attributed to Defendant Cook is legally insufficient to give rise to a claim for sexual harassment and hostile work environment under Title VII; (2) Plaintiff's claim of retaliation and wrongful termination under Title VII must be dismissed because he did not have a reasonable belief that the alleged statement of Defendant Cook violated Title VII, and thus his internal complaint regarding that statement was not protected activity; (3) Plaintiff's Title VII, ADA and NYHRL claims against the individual Defendants

must be dismissed because those claims cannot be brought against individual defendants; and (4) Plaintiff's ADA claim must be dismissed because (a) he lacks standing to assert such a claim based on the facts alleged, and (b) he failed to exhaust his administrative remedies with the Equal Employment Opportunity Commission ("EEOC") before filing that claim in this Court. (*See generally* Dkt. No. 13, Attach. 4 [Defs.' Memo. of Law].)

### C.     Plaintiff's Response

In Plaintiff's  response to Defendants' motion to dismiss, he argues as follows: (1) the single statement made by Defendant Cook is legally sufficient to sustain a sexual harassment claim, because it was sufficiently severe to so alter the terms and conditions of employment as to create a hostile work environment; (2) Plaintiff has alleged facts plausibly suggesting that he was retaliated against for making a formal complaint of sexual harassment, because he had a good-faith belief that the alleged statement of Defendant Cook was unlawful (in part because it violated one of Defendants' internal policies), and the EEOC rendered a determination favorable to Plaintiff on his retaliation claim; and (3) while district courts in the Second Circuit are split on the issue of whether a Title VII claim may be brought against an individual, the better-reasoned cases hold that supervisory employees can be individually liable because they are within the reach of Title VII's term "agent," which refers to an employee possessing decision-making authority.  (*See generally* Dkt. No. 14 [Plf.'s Response Memo. of Law].)

### D.     Defendants' Reply

In their reply, Defendants argues as follows: (1) to the extent that Plaintiff's legal arguments are supported by factual statements in the affidavit of Plaintiff's counsel that are not averments based on his personal knowledge, and/or the hearsay exhibits to that affidavit, those legal arguments should be rejected, under Local Rule 7.1(a)(2) of the Local Rules of Practice for

this Court, and/or governing case law; (2) the case cited by Plaintiff as supporting his argument that the single statement made by Defendant Cook was sufficiently severe to create a hostile work environment is factually distinguishable from the current case, and indeed supports a finding that the single statement made by Defendant Cook was *not* sufficiently severe to create hostile work environment; (3) contrary to Plaintiff's argument that protected activity exists where a complaint is made with a good-faith belief that the subject of the complaint constitutes merely a violation of a company's internal policy (rather than constituting a violation of Title VII), in fact such a complaint does not constitute protected activity; and (4) the reasonable-cause determination rendered by the EEOC regarding Plaintiff's retaliation claim is not determinative of the legal issues presented by Defendants' motion to dismiss, regarding Plaintiff's retaliation claim. (*See generally* Dkt. No. 16 [Defs.' Reply Memo. of Law].)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Motions to Dismiss for Failure to State a Claim

"A motion to dismiss on the basis that an action is barred by the statute of limitations is analyzed under Federal Rule of Civil Procedure 12(b)(6), not 12(b)(1)."  *Garner v. DII Indus., LLC*, 08-CV-6191, 2010 WL 456801, at *1 (W.D.N.Y. Feb. 4, 2010) (citing *Ghartey v. St John's Queens Hosp.*, 869 F.2d 160, 162 [2d Cir. 1989]).

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga County*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review) [citations omitted].

With regard to the first ground, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 [citations omitted]. The main purpose of this rule is to "facilitate a proper decision on the merits." *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) [citations omitted].

The Supreme Court has long characterized this pleading requirement under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. *Jackson*, 549 F. Supp.2d at 212, n.20 [citations omitted]. However, even this liberal notice pleading standard "has its limits." *Id*. at 212, n.21 [citations omitted]. As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. *Id*. at 213, n.22 [citations omitted]; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corporation v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of

an actionable claim.  *Id*. at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 1965 [citations omitted].  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*. [citations omitted].

As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[3]  It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2).  *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted; emphasis added].  That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim.  *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added].  That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever.  Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.[4]

---

[3]      *Rusyniak,* 629 F. Supp.2d at 214 & n.34 [citations omitted].

[4]      *Rusyniak,* 629 F. Supp.2d at 214 & n.35 (explaining holding in *Erickson*) [citations omitted].

As the Supreme Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Ashcroft*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted].   Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id*. at 1949 [citations omitted].  Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id*. (internal citations and alterations omitted).

###### B.      Legal Standards Governing Plaintiff's Claims

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties.  (*See* Dkt. No. 13, Attach. 4 [Defs.' Memo. of Law]; Dkt. No. 14 [Plf.'s Response Memo. of Law]; Dkt. No. 16 [Defs.' Reply Memo. of Law].)

## III.     ANALYSIS

###### A.      Plaintiff's Claim for Sexual Discrimination and Hostile Work Environment Under Title VII

As stated above in Part I.B. of this Decision and Order, Defendants seek the dismissal of Plaintiff's claim for sexual discrimination and hostile work environment under Title VII, because the single alleged statement attributed to Defendant Cook is legally insufficient to give rise to a

claim for sexual harassment and hostile work environment under Title VII.  Based on even a liberal construction of Plaintiff's Complaint, the Court accepts Defendants' argument for two reasons.

First, Plaintiff has failed to allege facts plausibly suggesting that his work environment was objectively severe or pervasive.  Rather, Plaintiff's Complaint alleges that, on one occasion, his supervisor, Defendant Cook, while in the presence of three co-workers, looked directly at him and said, "If you had a picture of your wife's pussy, would you bring it in to show it to everybody?"  (Dkt. No. 1, at ¶ 17.)  Of course, the Court in no way condones such a statement.  However, in order for an isolated incident to create an objectively hostile work environment, that single incident must be of extraordinary severity, such that it effectively alters the terms and conditions of employment.[5]  Examples of single incidents that have been recognized as creating a triable issue of material fact on the existence of a hostile work environment include (1) an employee being subjected to sexual assault by a co-worker,[6] and (2) a female firefighter being accused of "gain[ing] her office of lieutenant by performing fellatio," where the accusation came from her co-worker, "at length, loudly, and in a large group in which [the female firefighter] was

_____

[5]       *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness. But it is well settled in this Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace"); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (noting that "[w]e have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment").

[6]       *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 (2d Cir. 1995) (stating, in dictum, that "[e]ven a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for the purposes of Title VII liability") (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 60, 67 [1986] [holding that allegations of constant verbal harassment, coupled with an allegation of forcible rape of female bank teller by bank vice president *on several occasions*, were sufficient to establish claim for hostile environment harassment] [emphasis added]).

9

the only female and many of the men were her subordinates," creating a justified fear that she would be left in peril at fire scenes.[7]

Here, Plaintiff alleges that Defendant Cook's  "unwelcome statement" was "shocking, insulting and harassing."  (Dkt. No. 1, at ¶ 18.)  However, Plaintiff does not allege non-conclusory facts plausibly suggesting that the statement altered the terms and conditions of his employment.  To the contrary, Plaintiff alleges that, after receiving this "unwelcome statement," he "made known his intention to report this incident to Dave Laden, the Plant Manager, *upon Mr. Laden's return from vacation*."  (*Id*. [emphasis added].)  Conspicuously missing from Plaintiff's Complaint is any allegation that, during the Plant Manager's vacation, Plaintiff felt the need to report the incident in question to another superior, such as Defendants Marsella or Sutton.  Given that Plaintiff found the conditions of his employment amenable enough to endure during the Plant Manager's vacation, the Court finds that factual allegations have not been alleged plausibly suggesting that the unwelcome statement at issue altered the terms and conditions of Plaintiff's employment.

Second, Plaintiff has failed to allege facts plausibly suggesting that the "unwelcome statement" was made *because of his sex*.[8]  Instead, Plaintiff relies on a Southern District of New York decision for the proposition that comments are made "because of sex" when the comments are of a sexual nature and related directly to a male's sexual behavior with his wife.  *Carrasco v.*

---

[7]     *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000).

[8]     *See Alfano*, 294 F.3d at 374 (noting that, in order to establish a sex-based hostile work environment under Title VII, "it is 'axiomatic' that . . . a plaintiff . . . demonstrate that the conduct occurred because of h[is] sex"); *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 80 (1998) (noting that "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination . . . because of . . . sex") (internal quotation marks omitted).

*Lenox Hill Hosp.*, 99-CV-0927, 2000 WL 520640, at *9 (S.D.N.Y. Apr. 28, 2000).  The problem is that, in *Carrasco*, the comments made by the plaintiff's co-worker were found to be made because of the plaintiff's gender, because those comments related to an alleged videotape of the plaintiff actually engaging in sexual relations with his wife.  *Carrasco*, 2000 WL 520640, at *7-8.[9]  Here, the comment consisted of a rhetorical (albeit juvenile, crude and vulgar) question that involved Plaintiff's wife.  However, the question did not plausibly suggest that it was caused by Plaintiff's gender, sexual orientation, sexual promiscuity, sexual abstinence, or sexual relationship with his wife.[10]  Under these circumstances, the Court finds that Plaintiff has failed to allege facts plausibly suggesting that Defendant Cook posited an unwelcome question to Plaintiff because of his sex.

---

[9]      It is worth noting that the court in *Carrasco* found that, because "the alleged comments were neither frequent nor pervasive[, . . .] the April 1998 comments were not severe enough to alter the conditions of plaintiff's employment as to create a hostile working environment."  *Carrasco*, 2000 WL 520640, at *10.

[10]      *Cf. Brown v. Henderson*, 257 F.3d 246, 255 n.3 (2d Cir. 2001) (noting that there was "no indication" that mockery of plaintiff's alleged affair with a married coworker "was related to her being a woman"); *LaGrande v. Decrescente Distrib. Co., Inc.*, 06-CV-0467, 2008 WL 2385799, at *2-4 (N.D.N.Y. June 9, 2008) (Scullin, J.) (finding, *inter alia*, that, despite a district manager's comments to male plaintiff about what he wants to do sexually to certain women, plaintiff failed to state a hostile work environment claim because he did "not allege that Mr. Schrader solicited sex from him nor does he allege that Mr. Schrader displayed a general hostility to males in the workplace[, and] Plaintiff asserts that a female customer complained to him about Mr. Schrader looking at her in a sexual manner, which defeats any claim that Mr. Schrader treated women differently than men"), *aff'd in part, vacated in part*, No. 08-3010, 2010 WL 1049320 (2d Cir. Mar. 23, 2010); *Phillips v. Merchants Ins. Corp.*, 3 F. Supp. 2d 204, 206, 208 (N.D.N.Y. 1998) (McAvoy, J.) (finding that defendant's comment that she did not care if plaintiff had to "dance naked in the snow" to get business, and her calling him "little boy" and "dumb man" were not related to plaintiff's gender); *Johnson v. Tower Air, Inc.*, 149, F.R.D. 461, 463, 467-469 & n.2 (E.D.N.Y. 1993) (finding that defendant's question to plaintiff "what does it look like under that uniform?," his statement that "what [she] needed was a good f***," and his statement that she was not sitting in her "jump seat" for landing were not related to plaintiff's gender).

For these reasons, Plaintiff's claim for sexual discrimination and hostile work environment under Title VII is conditionally dismissed, under the terms described below in Part III.E. of this Decision and Order.

### B.     Plaintiff's Claim for Retaliation and Wrongful Termination Under Title VII

As stated above in Part I.B. of this Decision and Order, Defendants seek the dismissal of Plaintiff's claim for retaliation and wrongful termination under Title VII, because Plaintiff did not have a reasonable belief that the alleged statement of Defendant Cook violated Title VII, and thus his internal complaint regarding that statement was not protected activity.  Based on even a liberal construction of Plaintiff's Complaint, the Court accepts Defendants' argument.

As Defendants state in their memorandum of law in support of their motion to dismiss, in order to establish that he engaged in protected activity, "a plaintiff need not prove that the conditions against which he protested actually amounted to a violation of Title VII."  *Wimmer v. Suffolk County Police Dept.*, 176 F.3d 125, 134 (2d Cir. 1999).  Rather, the plaintiff "must demonstrate only that he had a 'good faith, *reasonable* belief that the underlying challenged actions of the employer violated the law.'"  *Wimmer*, 176 F.3d at 134 (quoting *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 [2d Cir. 1988]) [emphasis added].

This reasonableness requirement is critical and is infused into the good nature of the good faith requirement.  For this reason, in analyzing whether the plaintiff had a good faith belief that the actions complained of violated the law, "[m]ere subjective good faith belief is insufficient."  *Sullivan-Weaver v. New York Power Auth.*, 114 F. Supp.2d 240, 243 (S.D.N.Y. 2000) (noting that "the belief must be reasonable and characterized by *objective* good faith") [emphasis

added].[11]  "Whether th[e] belief was 'objectively reasonable,' and not merely subjective, is

determined based on the facts and the record presented."  *Martin v. State Univ. of New York*,

06-CV-2049, 2010 WL 1257782, at *17 (E.D.N.Y. Mar. 26, 2010) (citations omitted) (finding

that defendant's "Indian woman running the unit" remark "could be interpreted as a direct insult

which, in light of his past comments, could have led Hegde to reasonably conclude that she was

the victim of unlawful harassment").  Moreover, it should be noted that, "[b]ecause it is the

totality of the circumstances, and not merely the circumstances that gave rise to the complaint in

question, which determine the reasonableness of the employee's belief, courts exploring the issue

of protected activity have consistently concluded that a single, isolated inappropriate comment is

generally insufficient to engender a reasonable belief that a Title VII violation has occurred."

*Abeln v. Ultra Life Batteries*, 07-CV-6113, 2009 WL 857497, at *2 (W.D.N.Y. Mar. 30, 2009)

(collecting cases).

  Here, even accepting the allegations of Plaintiff's Complaint as true, at most that

Complaint alleges that Plaintiff was subjected to only one sexually explicit comment, made by

his supervisor, during the six years in which Plaintiff was employed by Defendant Byrne Dairy.

Moreover, the Court notes that, as stated above in Part III.A. of this Decision and Order, the

comment consisted of a rhetorical (albeit juvenile, crude and vulgar) question that was not

caused by Plaintiff's gender, sexual orientation, sexual promiscuity, sexual abstinence, or sexual

relationship with his wife.  Under these circumstances, the Court cannot find that it was

objectively reasonable for Plaintiff to believe that Title VII had been violated such that his

---

[11] *See also Jones v. Consumer Information Dispute Resolution*, 06-CV-1809, 2007
WL 2398811, at *4 (S.D.N.Y. Aug. 16, 2007) (noting that a "mere subjective good faith is
insufficient to support a Title VII claim because the belief must be based on an objective good
faith, reasonable belief").

complaint about his supervisor's comment constituted protected activity. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 269, 272 (2001) (holding that, where plaintiff's male supervisor, in the presence of plaintiff and plaintiff's male co-worker, read aloud sexually explicit statement attributed to school district job applicant, stated that he did not know what it meant, and was told by plaintiff's male co-worker, "I'll tell you later," at which comment both plaintiff's male supervisor and male co-worker laughed, "no reasonable person could have believed that the single incident . . . violated Title VII's standard").[12]

---

[12]        *See also Abeln*, 2009 WL 857497, at *3 (finding that "plaintiff could not have had a reasonable belief that his complaint concerning Sengillo's isolated, 'offensive utterance' [pertaining to another employee having sex with his girlfriend] constituted sexual harassment, or concerned any other employment practice prohibited by Title VII, and noting that "[i]t is undisputed that Sengillo's comment, while inappropriate and unprofessional, was not specifically directed toward plaintiff, and plaintiff [failed to] allege that he was humiliated, embarrassed or offended to the extent that the terms and conditions of his employment were altered"); *Bain v. Wal-Mart Stores, Inc.*, 585 F. Supp.2d 449, 454 (W.D.N.Y. 2008) (finding that, "[b]ecause [plaintiff]'s complaint about a single interaction with [her supervisor] and possible description of 'vulgar' comments he had previously made fell short of describing a hostile work environment, [her complaint] did not, as a matter of law, constitute protected activity"); *Spadola v. New York City Transit Auth.*, 242 F. Supp.2d 284, 295 (S.D.N.Y. 2003) (concluding that "no rational jury could find that, under the totality of the circumstances evidenced here, Washington's isolated allegedly harassing remark made during the July 1997 Incident constituted a sufficient ground to support a good faith, objectively reasonable belief that the offending conduct constituted a violation of Title VII, and that [plaintiff] had thus engaged in a protected activity when he protested the comment as an unlawful employment practice"); *Holmes v. Long Island R.R. Co.*, 96-CV-6196, 2001 WL 797951, at *1-2, 6 (E.D.N.Y. June 4, 2001) (finding that "plaintiff Holmes' belief that she had been subjected to a hostile work environment was not objectively reasonable . . . [g]iven the isolated nature of the incidents complained of," which consisted of physical therapist, whom plaintiff was directed to see as result of sustaining work-related injuries, [1] telling plaintiff she had "nice body" on two occasions, [2] telling plaintiff that he would like to see her in bathing suit in glass tank on third occasion, and [3] asking plaintiff to undress during examination, and becoming upset when she refused to comply); *cf. Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1179 (2d Cir. 1996) (concluding that jury's finding that plaintiff's complaint constituted protected activity was not unreasonable where evidence presented to jury consisted of two objectionable comments from co-workers, but noting that "plaintiff likely would not have passed the 'good faith reasonable[ness]' test of *Manoharan* if the only evidence offered at trial had been Infantino's isolated comment [regarding his 'pecker']").

14

For these reasons, Plaintiff's claim for retaliation and wrongful termination under Title VII is conditionally dismissed, under the terms described below in Part III.E. of this Decision and Order.

## C.    Plaintiff's Claim for Discrimination Under the ADA

As stated above in Part I.B. of this Decision and Order, Defendants seek the dismissal of Plaintiff's discrimination claim under the ADA, because (a) he lacks standing to assert such a claim based on the facts alleged, and (b) he failed to exhaust his administrative remedies with the EEOC before filing that claim in this Court.  Based on even a liberal construction of Plaintiff's Complaint, the Court accepts Defendants' argument.

As an initial matter, the Court notes that, as Defendants accurately point out in their reply memorandum of law, Plaintiff failed to respond to Defendants' above-described arguments regarding his ADA claim.  (*See generally* Dkt. No. 14.)  As a result, Defendant's burden with regard to its motion is lightened such that, in order to succeed, it need only show its entitlement to the relief requested in its motion, which has appropriately been characterized as a "modest" burden.[13]  For the reasons stated by Defendants in their motion papers, the Court finds that

---

[13]      *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1 n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (citing cases that stand for the proposition that, where plaintiffs do not respond to defendants' argument made in their summary judgment motion, plaintiffs are deemed to have consented to defendants' argument, and thus defendants must only satisfy their "modest threshold burden" of demonstrating entitlement to the relief requested in their motion for summary judgment); *accord, Cossey v. David,* 04-CV-1501, 2007 WL 3171819, at *4 & nn. 21, 22 (N.D.N.Y. Oct. 29, 2007) (Lowe, M.J. adopted by Scullin, J.) (collecting cases); *Niles v. Nelson*, 72 F. Supp.2d 13 (N.D.N.Y. 1999) (McAvoy, J.) (holding that when a party does not respond to a portion of the opposing party's motion, they indicate that they consent to the granting of summary judgment with respect to that portion of the motion or have abandoned the claim); *cf. Di Giovanna v. Beth Isr. Med. Ctr.*, 08-CV-2750, 2009 WL 2870880,

Defendants have met this lightened burden.  (*See generally* Dkt. No. 13, Attach. 4, at 17-21.)  In any event, the Court finds that Defendants' argument would survive even the heightened scrutiny appropriate on a contested motion.

Plaintiff's ADA claim alleges, *inter alia*, as follows: (1) Defendant Byrne Dairy, who is an "employer" within the meaning of the ADA, "established and enforced a policy requiring all new employees to consent to a medical examination upon the company's demand as a term and condition of their employment; (2) the ADA prohibits an employer from inquiring about a job applicant's medical condition unless restricted to the applicant's ability to perform job-related functions; (3) the ADA also limits an employer to conducting medical examinations as a term of employment only under certain conditions, and prohibits such examinations from being conducted upon the employer's demand throughout an employee's term of employment; (4) based on these restrictions and limitations, Byrne Dairy's policy of requiring new employees to consent to a medical examination upon demand violated the ADA; and (5) because Plaintiff was coerced into agreeing to this illegal condition of employment and repeatedly subjected to this illegal condition of employment throughout the entire term of his employment with Byrne Diary, he suffered physical damages, emotional and psychological damages, embarrassment, humiliation, emotional distress, and mental anguish.  (Dkt. No. 1, at ¶¶ 54-62.)

Conspicuously absent from Plaintiff's Complaint is any factual allegation plausibly suggesting that Plaintiff's was ever asked by Defendant Byrne Dairy to submit to a medical examination.  As a result, the Court accepts Defendants' first argument (i.e., that Plaintiff has failed to allege that he suffered any injury as a result of Defendant Byrne Dairy's alleged

---

at *10 n.108 (S.D.N.Y. Sept. 8, 2009) (citing cases for proposition that plaintiff's failure to respond to argument made in summary judgment motion as to why certain claim should be dismissed constitutes abandonment of claim).

improper policy regarding medical examinations).  *See Whitmore v. Arkansas*, 495 U.S. 149, 155

(1990) (noting that, in order to establish Article III standing, a plaintiff must demonstrate "injury

in fact"–a harm that is both "concrete" and "actual or imminent, not conjectural or

hypothetical").[14]

Furthermore, the Court accepts Defendants' second argument because Plaintiff failed to

allege facts plausibly suggesting that the charge in his EEOC Complaint was reasonably related

to his ADA claim.  "Exhaustion of administrative remedies is a requirement for employment

discrimination actions under the ADA."  *Brown v. MTA New York City Transit*, 06-CV-6857,

2008 WL 4722096, at *2 (E.D.N.Y. Oct. 21, 2008).[15]  "Claims not raised in an EEOC complaint,

however, may be brought in federal court if they are 'reasonably related' to the claim filed with

the agency."  *Williams v. New York City Housing Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (citation

omitted).  "Th[e] [Second] Circuit has recognized that 'a claim is considered reasonably related

---

[14]      *See also Conroy v. New York State Dept. of Corr. Servs.*, 333 F.3d 88, 94-95 (2d
Cir. 2003) (noting that, although "a plaintiff need not prove that he or she has a disability
unknown to his or her employer in order to challenge a medical inquiry or examination under 42
U.S.C. § 12112(d)(4)(a)[,]" a plaintiff must allege that she has suffered and/or will suffer "an
injury prohibited by the ADA's prohibition against inquiries into disability" in order to have
standing); *Roe v. Johnson*, 334 F. Supp.2d 415, 420 (S.D.N.Y. 2004) (finding that candidate for
admission to state bar lacked standing to assert claim that question on bar application, which
asked whether applicant had any mental or emotional condition that would adversely affect her
ability to practice law, violated Title II of the ADA prohibiting disability discrimination by a
public entity because candidate failed to allege that the inclusion of question harmed her
personally and individually); *Fung Wah Bus Transp., Inc. v. Ricon Corp.*, 08-CV-6481, 2009
WL 230157, at *2-3 (S.D.N.Y. Jan. 23, 2009) (dismissing plaintiff's complaint alleging, *inter
alia*, violation of ADA for lack of standing "because [p]laintiff . . . failed to assert injury in fact
within the meaning of Article III").

[15]      *See also Manik v. Rose Assoc. Simon Avram*, 06-CV-0477, 2007 WL 4254836, at
*1 (S.D.N.Y. Dec. 3, 2007) (noting that "[t]he laws that govern the [plaintiff's] action, Title VII
and the ADA, do not allow a plaintiff to bring a claim against a defendant in federal court if the
plaintiff has not first exhausted the remedies available from the EEOC or an authorized state
agency")

if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'" *Williams*, 458 F.3d at 70 (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 [2d Cir. 2001]).  "In this inquiry, 'the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'" *Id.* (quoting *Deravin v. Kerik*, 335 F.3d 195, 201 [2d Cir. 2003]).  "The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'" *Id.* (citation omitted).

Here, Plaintiff's EEOC Complaint alleges merely that he was subjected to a harassing comment, and that he was subsequently terminated for complaining about the comment.  (Dkt. No. 13, Attach. 3, at 4.)  In his form EEOC Complaint, when he is asked what type of discrimination he is alleging, Plaintiff does not check the box marked "DISABILITY" (but, rather, checks only the boxes marked "SEX" AND "RETALIATION").  (*See id.* at 4.)  In addition, his EEOC Complaint does not identify, or even obliquely reference, the policy that he now claims violated the ADA.  (*See id.*)  Under these circumstances, the Court cannot find that Plaintiff's ADA claim–that Byrne Dairy improperly subjected employees to medical examinations–was reasonably related to Plaintiff's EEOC claim that he was subjected to a sexually harassing comment on April 12, 2006, and then discharged in a retaliatory manner on about May 2, 2006.

Moreover, the Court finds that Plaintiff's exhaustion requirement is not satisfied by the EEOC's *sua sponte* and brief determination that there was reasonable cause to believe that Byrne Dairy violated the ADA due to its requirement, in its employment applications, that employees agree "to a medical examination at any time at the Company's request."  (Dkt. No. 13, Attach. 3,

18

at 6.)  The Court makes this finding for three reasons.  First, while the EEOC's ADA determination touches upon Plaintiff's charge in his Complaint that Byrne Diary wrongfully coerced him to consent to a medical examination upon demand when it hired him in or about June 2000, the EEOC's ADA determination does not address Plaintiff's charge that Byrne Diary "repeatedly subjected [him] to this illegal condition of employment throughout the entire term of his employment . . . ."  (Dkt. No. 1, at ¶¶ 19, 57-62.)  Second, the limited ADA determination rendered, which is expressly based only on a review of Plaintiff's "application for employment," fails to suggest that it was based on any evidence received from Byrne Dairy produced after Byrne Dairy received due notice of an ADA claim (e.g., any other employment application materials, any business necessity of such medical examinations, etc).[16]  Third, even if the ADA did fully investigate the limited ADA claim it determined, an investigation alone is not enough; that claim also must reasonably relate to the claims made to the EEOC.[17]  As stated above, the Court cannot find that the limited ADA claim determined by the EEOC–that Byrne Dairy wrongfully coerced Plaintiff to consent to a medical examination upon demand, when it hired him in June 2000–was reasonably related to Plaintiff's EEOC claim that Byrne Dairy subjected him to a sexually harassing comment on April 12, 2006, and then discharged him in a retaliatory manner on or about May 2, 2006.

---

[16]    *See Miller v. Int'l Tel. & Tel.*, 755 F.2d 20, 26 (2d Cir.), *cert. denied*, 474 U.S. 851 (1985) ("The purpose of the notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to *and* investigated by the EEOC.") [emphasis added].

[17]    *See Staples v. Avis Rent-A-Car System, Inc.*, 537 F. Supp. 1215, 1218 (E.D.N.Y. 1982) ("The test is not whether EEOC did, in fact, investigate the [new charge] but whether such charge reasonably relates to the charges made to the EEOC and to its investigation.").

For these reasons, Plaintiff's discrimination claim under the ADA is conditionally dismissed, under the terms described below in Part III.E. of this Decision and Order.

### D.    Plaintiff's Claim for Discrimination Under the NYHRL

As stated above in Part I.B. of this Decision and Order, Defendants seek the dismissal of Plaintiff's discrimination claims against the individual Defendants under, *inter alia*, the NYHRL, because that claim cannot be brought against individual defendants.

Of course, this claim arises under state law.  The Court has already conditionally dismissed all of Plaintiff's federal claims in this action (i.e., his Title VII and ADA claims). Under the circumstances, if Plaintiff fails to meet the conditions described below in Part III.E. of this Decision and Order, the Court would decline to extend pendent jurisdiction over this claim–both to the extent that it is asserted against the individual Defendants *and* to the extent that it is asserted against Defendant Byrne Dairy.[18]  As a result, Plaintiff's NYHRL discrimination claim is conditionally dismissed in its entirety, under the terms described below in Part III.E. of this Decision and Order.  The Court notes that, should it eventually dismiss this claim, this claim would be dismissed without prejudice to refiling in New York State Court within thirty (30) days of the dismissal, pursuant to 28 U.S.C. § 1367(d).[19]

---

[18]     "Where a district court has dismissed all claims over which it has original jurisdiction, the court may decline to exercise jurisdiction over state law claims."  *Hurley v. County of Yates*, 04-CV-6561, 2005 WL 2133603, at *3 (W.D.N.Y. Aug.31, 2005) (citing 28 U.S.C. § 1367[c][3] ), *accord Middleton v. Falk*, 06-CV-1461, 2009 WL 666397, at *9 (N.D.N.Y. Mar.10, 2009) (Suddaby, J. adopting Homer, M.J.); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (citations omitted) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if . . . not present a federal court should hesitate to exercise jurisdiction over state claims.").

[19]     Although the Court declines to address the merits of Plaintiff's NYHRL claim against the individual Defendants at this juncture, the Court is mindful of the fact that "[t]he Second Circuit has held that individual liability may be imposed under the NYSHRL on a

### E.      Dismissal with or Without Prejudice

While generally the Court would be reluctant to *sua sponte* extend to a represented

litigant an opportunity to amend his complaint, here the Court finds that the *sua sponte* extension

of such an opportunity is appropriate for two reasons.

First, when Defendants filed their motion to dismiss for failure to state a claim in July of

2008, Fed. R. Civ. P. 15(a)(1) conferred upon Plaintiff the right to file an Amended Complaint

"as a matter of course" at any time before Defendants filed an Answer.[20]  Although Plaintiff

chose to not file such an Amended Complaint in the months that followed, that choice may have

been based on a belief that the Court would have afforded him a chance to file an Amended

Complaint before it dismissed his action.

Second, generally, civil rights litigant such as Plaintiff are to be afforded special

solicitude in this Circuit.[21]  One of the practical effects of such special solicitude is to allow a

---

co-worker who 'actually participates in the conduct giving rise to a discrimination claim,'
irrespective of whether that co-worker possessed the authority to do more than carry out
personnel decisions made by others."  *Spilkevitz v. Chase Inv. Servs. Corp.*, 08-CV-3407, 2009
WL 2762451, at *6 (E.D.N.Y. Aug. 27, 2009) (quoting *Feingold v. New York*, 366 F.3d 138,
157-158 [2d Cir. 2004]).

[20]      In 2009, Fed. R. Civ. P. 15(a)(1) was amended to restrict the referenced right so
that Plaintiff could exercise it only within twenty-one (21) days of service of Defendants' motion
to dismiss for failure to state a claim.  Fed. R. Civ. P. 15(a)(1).  The Court finds that, under the
circumstances, it would be neither feasible nor just to apply this amended rule retroactively.  *See
Ackermann v. Levine*, 610 F. Supp. 633, 644 (S.D.N.Y. 1985) (holding that, because amended
rule of civil procedure regarding service of pleadings was not in existence at time summons and
complaint were issued and served in the case, the amended rule had no effect) [citations
omitted], *aff'd in part, rev'd in part on other grounds*, 788 F.2d 830, 840 (2d Cir. 1986).

[21]      *See, e.g., Gant to Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995)
(explaining that the liberal pleading standard set forth in Fed. R. Civ. P. 12[b][6] "is applied with
greater force where the plaintiff alleges civil rights violations") [citation omitted]; *Branum v.
Clark*, 927 F.2d 698, 705 (2d Cir. 1991) (explaining that the liberal pleading standard set forth in
Fed. R. Civ. P. 12[b][6] "is to be applied with particular strictness when the plaintiff complains
of a civil rights violation") [citations omitted]; *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)

plaintiff to amend his action unless the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile.[22]  Here, the Court has some difficulty finding that the referenced defects in Plaintiff's Complaint are merely formal.  However, the Court will give the benefit of the doubt, out of special solicitude to him.

For these reasons, before the Court dismisses Plaintiff's action, the Court will afford him an opportunity to file an Amended Complaint within thirty (30) days from the filing date of this Decision and Order.  Plaintiff is reminded that his Amended Complaint must be a complete pleading that will replace and supersede the original complaint in its entirety.  Finally, Plaintiff is cautioned that, if he fails to file an Amended Complaint that states a claim upon which relief can be granted, his action will be dismissed without further Order of the Court.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13) is **<u>GRANTED</u>**; and it is further

---

(explaining that the liberal pleading standard set forth in Fed. R. Civ. P. 12[b][6] "applies with greater force when the complaint is submitted pro se *or* the plaintiff alleges civil rights violations") [emphasis added; citation omitted], *accord, Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) [citation omitted].

[22]      As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993) (citations omitted), *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend should be denied").

**ORDERED** that the remainder of Plaintiff's Complaint (Dkt. No. 1) shall be

<u>**DISMISSED**</u> in its entirety without further Order of this Court unless, within **THIRTY (30)**

**DAYS** of the filing date of this Decision and Order, Plaintiff files an Amended Complaint that

states a claim upon which relief may be granted.

Dated: June 22, 2010
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge