UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
SYRACUSE DIVISION

===============================================================================

CHRISTOPHER M. DOTTOLO,

            Plaintiff,

-against-

BYRNE DIARY, INC., NICK MARSELLA, Individually
and in his capacity as Vice President of Operations, KEVIN
J. SUTTON, Individually and in his capacity as Warehouse
Manager, and BRANDON COOK, Individually and in his
capacity as Supervisor,

            Defendants.

AMENDED
VERIFIED COMPLAINT

Jury Demand

Case No.: 5:08-CV-0390
(GTS/ATB)

===============================================================================

Plaintiff, CHRISTOPHER M. DOTTOLO, through his attorneys, O'HARA, O'CONNELL & CIOTOLI, for his Amended Verified Complaint against the Defendants states as follows:

## JURISDICTION

1. Plaintiff brings this action under the Title VII of the Civil Rights Act of 1964 at 42 U.S.C. §2000e-2; Title VII of the Civil Rights Act of 1964 at 42 U.S.C. §2000e-3; and the New York State Human Rights Law at N.Y. Executive Law §296.

2. This Court has jurisdiction under 28 U.S.C. §1331 and has supplemental jurisdiction for plaintiff's stated causes of action under 28 U.S.C. §1367.

3. On or about June 28, 2006, plaintiff filed a complaint with the Equal Employment Opportunity Commission (the "EEOC") (Charge No. 525-2006-00704), which was cross-filed

{W0159286.2}

with the New York State Division of Human Rights ("DHR"). The EEOC Complaint alleged that Defendants had committed violations of Title VII of the Civil Rights Act of 1964.

4. By letter dated December 7, 2007, the EEOC announced its determination that the evidence obtained as a result of its investigation established a violation of Title VII and a violation of the ADA.

5. The EEOC then attempted to resolve the matter between the parties informally via conciliation/negotiation, in which Byrne Dairy refused to participate. When a resolution could not be obtained, the EEOC issued plaintiff a Right to Sue letter.

6. On or about January 11, 2008, plaintiff received a Right to Sue letter from the EEOC dated January 9, 2008, regarding a claim under the Americans with Disabilities Act of 1990 ("ADA"), in addition to plaintiff's initial Title VII claim.

7. This action was commenced within 90 days of plaintiff's receipt of the Right to Sue letter.

8. Accordingly, plaintiff has exhausted his administrative remedies and complied with the requirements regarding the date by which this action must be commenced.

## THE PARTIES AND VENUE

9. Plaintiff resides in the Town of Cicero, County of Onondaga, and State of New York.

10. Defendant Byrne Dairy, Inc. ("Byrne Dairy") is a domestic corporation organized under the laws of the State of New York, with its principal office located in the City of Syracuse, County of Onondaga and State of New York.

11. At all times relevant herein, defendant Nick Marsella ("Marsella") was an employee of Byrne Dairy in the capacity of Vice President of Operations.

12. At all times relevant herein, defendant Kevin J. Sutton ("Sutton") was an employee of Byrne Dairy in the capacity of Warehouse Manager.

13. At all times relevant herein, defendant Brandon Cook ("Cook") was an employee of Byrne Dairy and was plaintiff's direct Supervisor.

14. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) (1) and (2) and (c). A substantial part of the events giving rise to the plaintiff's claims occurred within the Northern District of New York.

## FACTUAL BACKROUND

15. Plaintiff began his employment with Byrne Dairy in June 2000. At that time, plaintiff was in good mental and physical health.

16. In December, 2004, plaintiff was promoted to the position of Assistant Shift Supervisor by then Cooler Manager John Marchildon ("Marchildon").

17. Upon being promoted, plaintiff received training from Marchildon with respect to a number of company policies and procedures and other labor related topics. These included the topics of sexual harassment, sexual discrimination and retaliation. During the training, Marchildon stated to plaintiff that any act that violated Byrne Dairy policy also violated federal and state law. Marchildon also advised plaintiff that derogatory, sexually based comments could constitute sexual harassment and serve as a form of sexual discrimination. Marchildron informed plaintiff that, as an Assistant Shift Supervisor, he might have to handle a complaint of sexual harassment or sexual discrimination in the future, that his fellow employees had the right to

make such complaints, and that there could not be any retaliation against any employee who made such a complaint in good faith.

18. At no time during the term of plaintiff's employment prior to April 12, 2006, did defendants ever discipline plaintiff in any manner relative to his job performance. In fact, as noted above, plaintiff was promoted based on merit to Assistant Shift Supervisor in December, 2004.

**Hostile Work Environment**

19. On April 12, 2006, Cook, while in the presence of three co-workers, who were friends of his, said to plaintiff while looking directly at plaintiff, "If you had a picture of your wife's pussy, would you bring it in to show it to everybody?"

20. This incident was one of many occasions on which Cook had made this type of offensive comment in the workplace, including inquiries made into the sexual activity and sexual relationships of co-workers. As a consequence, the workplace was permeated with discriminatory sexual innuendo, ridicule and insult. Plaintiff was exposed to these types of comments on a repeated basis and found them to be offensive.

21. Examples of these types of remarks by Cook include frequent and repetitive tales of his sexual exploits, his claims that he was having sex with so many women that he was afraid his then girlfriend would find out, his fears that he had contracted venereal disease, his questions to male co-workers whether they would let wives or girlfriends engage in a *ménage a trois* (sometimes involving female Byrne Dairy employees), his aspersions that certain male employees were gay, and his constant comments about virtually every female employee that

walked by during the day, to include what type of sexual act he wanted to engage in with them, and where he wanted to do so.

22.     Rather than complain about this behavior, plaintiff tolerated it out of fear that he would be retaliated against and ostracized. As demonstrated below, these fears would later be realized.

23.     Although plaintiff found the April 12, 2006 unwelcome statement to be shocking, insulting and harassing, instead of immediately reporting the incident to Sutton, plaintiff decided to report this incident to the Plant Manager, Dave Laden, upon Laden's return from vacation, due to the fact that at the time, Sutton was a close friend of Cook.

24.     On or about April 15, 2006, plaintiff told a co-worker, Tim Race ("Race"), about the incident and that he intended to report the incident. Upon information and belief, Race shared that information with Cook. Upon further information and belief, once informed of plaintiff's intent to file a complaint regarding the events of April 12, 2006, Cook conspired with the three co-workers present during those events to create a sanitized version of what occurred, that included the claim that someone other than Cook had made the statement in question.

25.     Beginning almost immediately after his conversation with Race and lasting until the termination of his employment, plaintiff was repeatedly subjected to smirks and "the silent treatment" by Cook and others. Upon information and belief, the vile, disgusting and harassing statement made by Cook about plaintiff's wife had been shared with others. Further, Cook persisted in giving plaintiff the worst job assignments available, nearly all of which Cook knew aggravated to plaintiff's prior back and shoulder injuries, and all of which left plaintiff feeling isolated and targeted for scorn and ridicule by his supervisor and his co-workers.

26. After enduring this treatment for approximately one week, plaintiff found the terms and conditions of his employment to be so affected that rather than continue to wait for Mr. Laden's return from vacation, he reported the incident to Marsella pursuant to the company's "open door" policy.

27. Specifically, on or about April 28, 2006, plaintiff spoke to Marsella about the April 12, 2006 incident, and informed him that he wanted to be transferred to a different shift. At this time, plaintiff also told Marsella about the illegal activities Cook was engaging in at the workplace, specifically selling bootleg movies for personal gain.

28. Upon information and belief, Marsella subsequently instructed Sutton to investigate the April 12, 2006 incident.

29. On May 1, 2007, plaintiff received a phone call from Sutton inquiring why the plaintiff had not brought this matter to his attention before speaking with Marsella. During this conversation, there was no mention, nor any indication of any kind, that plaintiff's complaint constituted inappropriate conduct.

**Retaliation Against Plaintiff**

30. On or about May 2, 2006, plaintiff met with Sutton and Mark Nolan, at which time Sutton terminated plaintiff's employment for allegedly "falsely accusing a supervisor of a gross misconduct statement."

31. It was at this meeting, and just prior to Sutton terminating his employment, that plaintiff first learned that the co-workers present at the April 12, 2006 incident had made false and conflicting statements in an attempt to absolve Cook of any wrongdoing. *See*, Exhibit "A."

32. As Cook was directly facing and in full view of plaintiff at the time the statement was made, plaintiff knows that the statements referenced in Paragraph 31 were patently false.

33. Plaintiff attempted to point out the false and conflicting nature of these statements to Sutton, but was never given that opportunity. Instead, plaintiff was wrongfully terminated from his employment by Sutton.

34. Thereafter, plaintiff filed a claim for unemployment benefits with the New York State Department of Labor, which Byrne Dairy opposed. In support of its opposition, Byrne Dairy submitted a signed statement from Sutton, entitled "Notes from Chris Dottolo termination hearing 5/2/06." Those notes misrepresented the statements plaintiff had made to Sutton on or about April 28, 2006.

35. Further, during a hearing to consider plaintiff's appeal after he was denied unemployment benefits, plaintiff learned for the first time that another co-worker, who was not even present during the April 12, 2006 incident, and who stated the same to Sutton during the investigation, later changed his testimony and signed a statement which falsely indicated that he was present and that had overheard part of the conversation. *See*, Exhibit "B."

**EEOC Finding of Probable Cause**

36. On or about June 28, 2006, plaintiff filed his complaint with the EEOC for claims of sex-based discrimination, harassment, and retaliatory termination of employment. The complaint was cross-filed with DHR.

37. The EEOC subsequently determined that the evidence established a violation of Title VII. *See*, Exhibit "C."

38. On or about January 11, 2008, plaintiff received a Right to Sue letter from the EEOC for claims under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990. *See*, Exhibit "D."

**Subsequent Proceedings**

39. On or about April 11, 2008, plaintiff filed his initial complaint in this matter.

40. On or about June 26, 2008, defendants moved for an Order dismissing plaintiff's complaint pursuant to Rule 12(b)6.

41. By Memorandum, Decision and Order dated June 22, 2010, the Hon. Glenn T. Suddaby conditionally dismissed plaintiff's complaint, subject to plaintiff filing an amended complaint which states a claim upon which relief can be granted within 30 days.

42. Plaintiff submits this Amended Complaint within the time prescribed, upon the belief that it states claims upon which relief can be granted.

**AS AND FOR A FIRST CAUSE OF ACTION VERSUS BYRNE DAIRY
UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
HARASSMENT AND HOSTILE WORK ENVIRONMENT**

43. Plaintiff hereby incorporates paragraphs "1" through "42" inclusive, as if fully stated herein.

44. Defendant Cook, in his supervisory role over plaintiff, repeatedly subjected plaintiff to derogatory, harassing and humiliating comments of a sexual nature in the presence of other males, including harassing comments regarding plaintiff's wife, his sexual relationship with his wife, and his willingness to display his wife's genitalia. These comments sexually harassed plaintiff based on his gender because he was a husband and thus a male.

45. After being subjected to these act of sexual harassment, plaintiff stated his intention to report Cook's actions.

46. Thereafter, Cook fostered and subjected plaintiff to a hostile work environment, by harassing plaintiff and assigning him to job tasks that were the worst available and which Cook knew would aggravate plaintiff's prior back and shoulder injuries. Upon information and belief, Cook also made the nature of his actions against plaintiff known throughout the workplace, which had the effect of encouraging others to disparage plaintiff by knowing glances and smirks, or shunning plaintiff and subjecting him to the silent treatment, all of which materially altered the terms and conditions of plaintiff's employment.

47. Thus, at all times relevant herein, plaintiff was subjected to discriminatory embarrassment, ridicule, humiliation, insult and isolation through the concerted actions of the defendants, all of which established a hostile work environment.

48. Defendants Byrne Dairy, Marsella and Sutton knew of the discriminatory, insulting, harassing and humiliating comment made by Cook and the events that followed, and failed to correct or address in any way the hostile work environment that resulted.

49. As such, defendants Byrne Dairy, Marsella and Sutton were either deliberately indifferent towards, or tacitly approved of, the harassment and hostile work environment that plaintiff was subjected to.

50. As set forth above, the aforementioned actions of the defendants constituted a pattern and practice of discrimination, harassment and the establishment of a hostile work environment.

51. These acts violate Title VII of the Civil Rights Act of 1964, and are illegal.

52. As a direct and proximate result of these discriminatory acts, plaintiff has suffered monetary damages, physical damages, emotional and psychological damages, embarrassment, humiliation, emotional distress and mental anguish and suffering.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST BYRNE DAIRY
UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
RETALIATION AND WRONGFUL TERMINATION**

53. Plaintiff hereby incorporates paragraphs "1" through "52" inclusive, as if fully stated herein.

54. Plaintiff was subjected to unlawful retaliation pursuant to Title VII, in that plaintiff (a) engaged in a protected activity; (b) the Defendants knew of the protected activity; (c) plaintiff suffered an adverse employment action; and (d) there is a causal connection between the protected activity and the adverse employment action.

55. Specifically, while in the presence of several co-workers, plaintiff was subjected by Cook to sexually based derogatory, harassing and humiliating comments, including comments about his wife and his sexual behavior with his wife.

56. Based upon the training he after he was promoted to Assistant Shift Supervisor, plaintiff had a reasonable belief that the statements made by Cook constituted sexual harassment and violated both state and federal law, as well as company policy.

57. Thereafter, because of his belief that Cook's actions constituted sexual harassment in violation of the law and company policy, plaintiff complained about Cook's conduct to Marsella.

58. Plaintiff also complained to Marsella regarding illegal activities which Cook was engaging in at the workplace in violation of law and company policy.

59. Byrne Dairy, Marsella and Sutton responded to plaintiff's complaints by (a) failing to discipline Cook; (b) by absolving Cook of any responsibility as a result of conspiratorially false and tailored statements made by friends of Cook to exonerate Cook of any wrongdoing; and (c) thereafter, wrongfully terminating plaintiff's employment.

60. Plaintiff's termination from employment was a materially adverse employment action.

61. Based upon the prior training he had received, plaintiff had a good faith, reasonable belief that, because he had filed his complaint in good faith, the fact that he made a complaint was a protected activity. Thus, his termination from employment constituted retaliation and was a violation of federal and state law as well as company policy.

62. As a direct and proximate result of these retaliatory acts, plaintiff suffered monetary damages, physical damages, emotional and psychological damages, embarrassment, humiliation, emotional distress, and mental anguish and suffering.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS UNDER NEW YORK EXECUTIVE LAW §296, ET AL. DISCRIMINATION UNDER THE HUMAN RIGHTS LAW

63. Plaintiff hereby incorporates paragraphs "1" through "62" inclusive, as if fully stated herein.

64. At all times relevant herein, plaintiff was employed by Byrne Dairy and under the supervision of Marsella, Sutton and Cook.

65. As such, plaintiff was a covered individual under the New York Human Rights Law, Executive Law §296, et seq.

66. As set forth above, plaintiff was subjected to a series of unwanted sexually-based offensive remarks which culminated with Cook's comments regarding plaintiff's wife on April 12, 2006.

67. The April 12, 2006 incident was one of several times when Cook engaged in this type of offensive conversation and inquiry into the sexual activity and sexual relationships of co-workers in the workplace. Consequently, the workplace was permeated with discriminatory sexual intimidation, ridicule and insult, to which plaintiff was exposed on a repeated basis. This environment was offensive to plaintiff, and occasioned plaintiff to ask to be assigned to a different shift.

68. Plaintiff subsequently complained in good faith about being subjected to what he reasonably believed was sexually harassing conduct in violation of the Human Rights Law.

69. Based upon his prior training, plaintiff reasonably believed that making such a complaint in good faith constituted a protected activity.

70. As set forth above, once he filed his complaint, plaintiff was subjected to a hostile work environment, which had the effect of substantially altering the terms and conditions of plaintiff's employment.

71. As further set forth above, the aforementioned actions of the defendants constitute a pattern and practice of sex discrimination, disparate treatment, and/or harassment, as well as retaliation.

72. Defendant, through its agents, discriminated against and took retaliatory action against plaintiff with respect to the terms, conditions and privileges of his employment. Despite that despite the fact that plaintiff made his complaint in good faith and was engaged in a protected activity when he did so, defendants terminated plaintiff from his employment after he made his sexual harassment complaint.

73. Defendants actions are in violation of Executive Law § 296 (1)(e) et seq., and are illegal.

74. As a direct and proximate result of these acts, plaintiff suffered monetary damages, physical damages, emotional and psychological damages, embarrassment, humiliation, emotional distress, and mental anguish and suffering.

## DEMAND FOR TRIAL BY JURY

75. Pursuant to the Fed. R. Civ. P. 38, plaintiff respectfully demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests that the Court enter an award of damages in his favor in a sum to be determined according to proof and as provided by law, plus attorneys' fees, costs and disbursements incurred in prosecuting this action, punitive damages and such other and further relief as the Court may deem just and proper.

Dated: July 22, 2010

                                      Yours, etc.,

                                      s/Timothy A. Collins
                                      Timothy A. Collins, Esq.
                                      Bar Roll No. 512843
                                      O'HARA, O'CONNELL & CIOTOLI
                                      Attorneys for Plaintiff
                                      7207 East Genesee Street
                                      Fayetteville, New York 13066
                                      Phone: (315) 451-3810
                                      Fax: (315) 451-5585
                                      tac@oharalaw.com

INDIVIDUAL VERIFICATION

STATE OF NEW YORK  )
                   ) ss.:
COUNTY OF ONONDAGA )

CHRISTOPHER M. DOTTOLO, being duly sworn, deposes and says that the deponent is the Plaintiff in the within action; that deponent has read the foregoing Complaint and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes them to be true.

_____
CHRISTOPHER M. DOTTOLO

Sworn to before me this
22nd day of July, 2010.

_____
Notary Public

Timothy A. Collins
NOTARY PUBLIC, State of New York
No. 02CO6124464
Qualified in Cortland County
Commission Expires

{W0159286.2}